Case No. 25-50594

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

TREVER GUILBEAU, *individually and on behalf of all others similarly situated*; CHRISTOPHER O'MARA, *individually and on behalf of all others similarly situated*; HENRY HERBERT, JR.,

Plaintiffs-Appellees

*v.*

SCHLUMBERGER TECHNOLOGY CORPORATION,

Defendant-Appellant

On Permissive Appeal from the United States District
Court for the Western District of Texas, San Antonio Division
Case No. 5:21-cv-00142-JKP
Honorable Jason K. Pulliam, presiding

## BRIEF FOR PLAINTIFF-APPELLEES

Melinda Arbuckle, Texas Bar No. 24080773
marbuckle@wageandhourfirm.com
Ricardo J. Prieto, Texas Bar No. 24062947
rprieto@wageandhourfirm.com
**Wage and Hour Firm**
5050 Quorum Drive, Suite 700
Dallas, Texas 75254
(214) 489 - 7653
(469) 319 - 0317 – facsimile

*Attorneys for Plaintiff-Appellees*

Case No. 25-50594

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

TREVER GUILBEAU, *individually and on behalf of all others similarly situated*; CHRISTOPHER O'MARA, *individually and on behalf of all others similarly situated*; HENRY HERBERT, JR.,

Plaintiffs-Appellees

*v.*

SCHLUMBERGER TECHNOLOGY CORPORATION,

Defendant-Appellant

---

On Permissive Appeal from the United States District
Court for the Western District of Texas, San Antonio Division
Case No. 5:21-cv-00142-JKP
Honorable Jason K. Pulliam, presiding

---

## CERTIFICATE OF INTERESTED PERSONS

---

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1. have an interest in the outcome of this case. These representations are made so that the Judges of this Court may evaluate possible disqualification or recusal.

**Plaintiff-Appellees**

*Named Plaintiffs*: Trever Guilbeau, Christopher O'Mara

*Opt-in Plaintiffs*: Henry Hebert, Jr.; Zachary Vogl; Victor Welch; Usama Abdelghani; Jeffrey Fournier; David Puckett; Branson Bennett; Ali Mehio; Azu-Asonye Onwudebe; Tegrity Carroll; Catherine Bordelon; Musab Hassan; Babacar Sagne; Justin Scott; Ahmed Orozco; Thomas Brady; Alexander Camacho; Magid Ibrahim; Trevor Kuczajda; Richard Satterley; Dustin Barlow; Casey Chrystal; Kenneth Anyiakak; Steven Liffner; David Blevins; Francis Frournier III; Jesus Plascencia; Ryan Edwards; Justin Panter; Derrick Mouton; Ian Berkland

**Counsel for Plaintiff-Appellees**

Melinda Arbuckle, Ricardo J. Prieto, Wage and Hour Firm

**Defendant-Appellant**

Schlumberger Technology Corporation; Schlumberger Holdings Corporation; Schlumberger Ltd.

**Counsel for Defendant-Appellant**

Samuel Zurik, III, Robert P. Lombardi, Bryan E. Bowdler, Benjamin P. Kahn

Dated: January 5, 2026                    s/Melinda Arbuckle
                                           Melinda Arbuckle

                                           *Attorney for Plaintiff-Appellees*

iii

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellees Trever Guilbeau and Christopher O'Mara[1] (collectively, "Guilbeau") welcome the opportunity to present oral argument relative to Defendant-Appellant Schlumberger Technology Corporation's ("STC") claims should the Court require it.

---

[1] As discussed further below, Guilbeau worked for Defendant-Appellant as a field directional driller ("DD"), and Defendant-Appellant moved for summary judgment as to Guilbeau's claim. O'Mara worked for Defendant-Appellant as a remote measuring while drilling ("MWD"), and Defendant-Appellant did not move for summary judgment on O'Mara's claim. Henry Hebert, Jr. (the docket reflects "Herbert") is an opt-in plaintiff whose claims have not been considered. For brevity, Plaintiff-Appellees refer to their side as "Guilbeau."

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT.................................................4

TABLE OF CONTENTS .......................................................................................5

TABLE OF AUTHORITIES..................................................................................9

I.  JURISDICTIONAL STATEMENT...............................................................1

II.  STATEMENT OF THE ISSUES..................................................................1

III.  STATEMENT OF THE CASE.....................................................................2

    A.  Factual Background..............................................................................2

        1.  STC's Business Model................................................................2

        2.  STC's "Hybrid" Compensation Scheme; Day Rate Pay with a "Minimum Guarantee"....................................................2

        3.  STC Artificially Labels Its Day Rate Pay as "Bonuses" to Mask the Economic Reality that Day Rate Pay Is Ordinary Wages. .......................................................................3

        4.  If the Day Rates Are, in Fact, Wages—STC Cannot Satisfy § 604(b)'s Reasonable Relationship Test.................................5

        5.  A Factual Dispute Precludes Summary Judgment as STC Has Not Proven It Could Withhold Day Rates Based on Any Criteria.....................................................................5

    B.  Relevant Procedural History ...............................................................7

        1.  Initial Pleadings and STC's Repeated Motions to Dismiss ........7

        2.  Phase One *Swales* Discovery and STC's Motion for Summary Judgment .................................................................8

3.    STC's Extraordinary Writs and Interlocutory Appeal ................9

4.    Current Status of the Collective Action ....................................9

IV.    RULINGS PRESENTED FOR REVIEW ..................................................11

V.    SUMMARY OF ARGUMENT ....................................................................11

VI.    ARGUMENT ................................................................................................20

A.    The District Court Correctly Denied STC Summary Judgment Because a Genuine Issue of Material Fact Precludes Disposal of Guilbeau's Claim. ..........................................................................20

1.    Standard of Review..............................................................20

2.    STC Has Not Established It Complied with the Salary Basis Test as a Matter of Law. ...............................................21

3.    The District Court Understood the Relevant Regulatory Framework Applied in *Helix* and *Gentry II*—STC Misunderstands that Framework............................................22

4.    FLSA First Principles Require Courts to Look Beyond Labels to Determine the Real Character of an Employer's Compensation Scheme.............................................................26

a.    As a Matter of Economic Reality, Guilbeau's Day Rate Compensation Illustrates Perfectly the Concept of "Masked" or "Hidden" Wages. ....................26

b.    Guilbeau's Day Rate Compensation, Regardless of Its Inclusion on a Policy Document Commingling Day Rate and Non-Discretionary Incentive Bonuses, Does Not Constitute Bonus Pay......................30

i.    Hebert Confirms Employers Can Pay Bona Fide Bonuses as Additional Compensation to Salary Exempt Employees for Work Beyond the Normal

Workweek Without Becoming Liable to Pay
Overtime Wages. ...................................................32

ii.    In Wilson, Despite Reasoning Criticized by this
Court, STC Could Be Found, like Hebert, to Have
Complied with § 604(a) Due to the Infrequency of
Payment of Additional Compensation. ...............34

c.    STC Did Not Pay Guilbeau a "True Salary" Despite
Its Claim that Guilbeau Admits Being Paid a Salary
Under § 602(a)...................................................39

5.    *Venable*, Affirming a Ruling Issued Prior to *Helix*, Does
Not Mandate Summary Judgment Where the Facts Wildly
Diverge. .................................................................43

B.    STC Also Nitpicks Technical Aspects of the District Court's
Rulings but Establishes No Grounds to Overturn Its Orders. .............48

1.    The District Court Did Not Err in Reviewing the
Magistrate Judges Meticulous Rulings. ....................................48

2.    The District Court Correctly Held STC's Affirmative
Defense Is Not a "Threshold Issue" Forbidding Notice
Under *Swales* ...................................................49

a.    Standard of Review .........................................49

b.    Plaintiffs Cannot Be Made to Disprove FLSA
Exemptions on Which They Do Even Not Bear the
Burden of Proof to Satisfy Swales..................49

3.    The District Court Did Not Abuse Its Discretion in Finding
STC Judicially Estopped from Raising a Statutory
Argument..................................................................51

a.    Standard of Review .........................................51

b. STC Never Properly Raised the Issue of DOL's Authority to Regulate FLSA's Statutory Exemptions. ...................................................52

c. Even If STC Won Remand Regarding DOL's Authority—Its Argument Is Foreclosed by Mayfield.................................................................53

VII. CONCLUSION ...................................................................54

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brock v. Mr. W Fireworks, Inc.*,
814 F.2d 1042 (5th Cir. 1987) ................................................................26

*In re Coastal Plains, Inc.*,
179 F.3d 197 (5th Cir. 1999) .................................................................52

*Cunningham v. Circle 8 Crane Servs, L.L.C.*,
64 F.4th 597 (5th Cir. 2023) .................................................................21

*Dacar v. Saybolt, L.P.*,
914 F.3d 917 (5th Cir. 2018) .................................................................52

*Donovan v. Tehco, Inc.*,
642 F.2d 141 (5th Cir. 1981) .................................................................27

*Fontenot v. Upjohn Co.*,
780 F.2d 1190 (5th Cir. 1986) ...............................................................20

*Gagnon v. United Technisource, Inc.*,
607 F.3d 1036 (5th Cir. 2010) ...........................................................27, 28

*Gentry v. Hamilton-Ryker IT Sols., L.L.C.*,
102 F.4th 712 (5th Cir. May 24, 2024) (*Gentry II*) ....................................*passim*

*Hebert v. FMC Techs., Inc.*,
No. 22-20562, 2023 WL 4105427 (5th Cir. June 21, 2023) ......................*passim*

*Helix Energy Sols. Grp., Inc. v. Hewitt*,
598 U.S. 39 (2023)..............................................................................*passim*

*Hewitt v. Helix Energy Sols. Grp., Inc.*,
15 F.4th 289 (5th Cir. 2021), *aff'd*, 598 U.S. 39 (2023).............................30, 43

*Hopkins v. Cornerstone Am.*,
545 F.3d 338 (5th Cir. 2008) .................................................................26

*Impossible Electronic Techniques, Inc. v. Wackenhut Protective Sys., Inc.*,
   662 F.2d 1026 (5th Cir. 1982) ..............................................................17, 48

*Loper Bright Enters. v. Raimondo*,
   603 U.S. 369 (2024) (decided on June 28, 2024) ................................54

*Loy v. Rehab Synergies, L.L.C.*,
   71 F.4th 329 (5th Cir. 2023) ...........................................................50, 51

*Mayfield v. United States Department of Labor*,
   117 F.4th 611 (5th Cir. 2024) .........................................................19, 54

*Nevada v. U.S. Dept. of Labor*,
   275 F. Supp. 3d 795 (E.D. Tex. 2017)...............................................52

*Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*,
   117 F.4th 628 (5th Cir. 2024) .........................................................52, 53

*Pickens v. Hamilton-Ryker IT Solutions, LLC*,
   133 F.4th 575 (6th Cir. 2025) ...................................................35, 43, 47

*Segovia v. Fuelco Energy LLC*,
   No. SA-17-CV-1246-JKP, 2021 WL 2187956 (W.D. Tex. May 28,
   2021) .............................................................................................50, 51

*State v. Rettig*,
   987 F.3d 518 (5th Cir. 2021) ...........................................................19, 53

*Sterling v. Greater Houston Transp. Co.*,
   No. H-20-910, 2021 WL 2954663 (S.D. Tex. July 14, 2021)...........51

*Swales v. KLLM Transp. Servs., L.L.C.*,
   985 F.3d 430 (5th Cir. 2021) .....................................................*passim*

*Taylor v. HD & Assocs., L.L.C.*,
   45 F.4th 833 (5th Cir. 2022) (per curiam) .......................26, 27, 39, 40

*Texas v. U.S. Dept. of Labor*,
   756 F. Supp. 3d 361 (E.D. Tex. 2024)...............................................52

*U.S. v. Wheeler*,
   322 F.3d 823 (5th Cir. 2003) ..............................................................17

x

*Union Pac. R.R. Co. v. City of Palestine*,
    41 F.4th 696 (5th Cir. 2022) ..................................................................20

*Venable v. Schlumberger Ltd.*,
    No. 6:16-CV-00241, 2022 WL 895447 (Mar. 25, 2022) ...................................43

*Venable v. Smith Int'l, Inc.*,
    117 F.4th 295 (5th Cir. 2024) ........................................................*passim*

*Wilson v. Schlumberger Technology Corp.*,
    80 F.4th 1170 (10th Cir. 2023) ......................................................*passim*

**Statutes**

28 U.S.C. § 1331 ....................................................................................1

29 U.S.C. § 213 ...............................................................................18, 24

29 U.S.C. § 216(b) .................................................................................13

Fair Labor Standards Act, 29 U.S.C. §§ 201-219..............................................*passim*

**Other Authorities**

29 C.F.R. § 541.602(b)(3)......................................................................30, 40

29 C.F.R. § 541.604(a)................................................................11, 25, 33, 45

29 C.F.R. § 541.604(b) ............................................................................*passim*

29 C.F.R. § 778.115 ...................................................................................4

29 C.F.R. § 778.207(b) ............................................................................33

29 C.F.R. § 778.502(a)......................................................................31, 32, 33

69 Fed. Reg 22122-01, 2004 WL 865626 at *22271 ......................................19, 54

https://www.merriam-webster.com/dictionary/bonus .............................................30

Fed. R. Civ. P. 56 ...................................................................................48

## I.    JURISDICTIONAL STATEMENT

The district court has subject matter jurisdiction because Guilbeau brings claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (the "FLSA"). *See* 28 U.S.C. § 1331. STC agrees regarding subject matter jurisdiction and does not dispute personal jurisdiction. (Defendant-Appellant Br., p. 1)

This Court properly exercises jurisdiction over this appeal because the district court certified its rulings for interlocutory review (ROA.3879-3904), and this Court granted STC's petition for leave to appeal. (Doc. No. 5)

## II.    STATEMENT OF THE ISSUES

In addition to the issues identified by the district court (ROA.3903-3904), Guilbeau poses the following issue on appeal:

Did the district court err in denying summary judgment to STC where it found that STC failed to establish that day rates—paid for every day Guilbeau performed his job duties and constituting the bulk of his compensation—were not paid for work "beyond the normal workweek," but rather appeared to be wages simply for doing his normal work necessitating consideration of 29 C.F.R. § 541.604(b)'s reasonable relationship test under the relevant regulatory framework?

## III.    STATEMENT OF THE CASE

### A.    Factual Background

#### 1.    STC's Business Model

STC provides staff, technology, and expertise to its customers—oil and gas operators. (ROA.582-583 (30(b)(6) Dep. 21:5-22:17)) Among other pursuits, STC staffs its customer's worksites with DDs[2] like Guilbeau, who can only work on rigs performing non-vertical well drilling projects. (ROA.604-609 (30(b)(6) Dep. 43:11-48:10); ROA.1637-1638 (Guilbeau Dep. 33:18-34:10)) All STC revenue derives from customer payments. (ROA.656 (30(b)(6) Dep. 95:18-23))

STC's DDs regularly work twelve-hour shifts, seven days per week. (ROA.637-638 (30(b)(6) Dep. 76:4-77:4)) Consequently, STC's DDs frequently work over forty hours per week without receiving overtime premium pay. (ROA.2843-2847)

#### 2.    STC's "Hybrid" Compensation Scheme; Day Rate Pay with a "Minimum Guarantee"

During Guilbeau's employment from 2017 to 2019, STC guaranteed Guilbeau a small amount of money as a biweekly lump payment, $1,826.00. (*Id.*) But for

---

[2]    Per STC's 30(b)(6) corporate representative, DDs can be either field or remote. (ROA.621 (30(b)(6) Dep. 60:9-13)) But regardless of their physical location, DDs are paid day rate compensation every day they do their job duties and they can only do work on STC's customer's drilling rigs. (ROA.621-622 (60:10-61:16))

actually working as a DD—doing ordinary work on STC's customer's rigs—STC paid him a day rate. (*Id.*) In a typical week, Guilbeau's day rates could total $4,375, dwarfing the nominal "salary" of $913.00 per week, and functioning as his primary wage. (*Id.*)

According to Guilbeau, this compensation was unconditionally paid and not an "extra" incentive. Rather most of his standard pay for work within his normal workweek consisted of day rate pay:

> Q    […] So for every day you were working on a rig, you would get a base payment that was for – that was calculated by the day, right? Correct?
> A    Yes, sir.

(ROA.1637-1638 (Guilbeau Dep. 33:18-34:10))

### 3.    STC Artificially Labels Its Day Rate Pay as "Bonuses" to Mask the Economic Reality that Day Rate Pay Is Ordinary Wages.

Although STC now artificially labels rig day rate pay and standby day rate pay as "bonuses," as a matter of economic reality they represent compensation for ordinary work—wages—and not supplemental incentives.

Indeed, the record reveals these payments were not "supplemental" or "occasional." In 2018 and 2019, Guilbeau earned non-variable rig day rate or standby day rate pay <u>every single day</u> he worked for STC, excluding five days spent

3

training.[3] Indeed, standby days were still working days for Guilbeau, he was simply paid at a different rate, which happens all of the time with workers who perform different types of work.[4] This is clear evidence that the rig day rate represents ordinary wages—not a bonus—because he always received time-based pay when he was working. Thus, Guilbeau's actual pay was based on time worked.

In contrast, Guilbeau also received <u>actual bonuses</u> for exemplary or extra work. For instance, Guilbeau received lead bonuses when he was the most experienced member of a crew, and reduced crew bonuses when on a short-staffed crew. (ROA.1637-1640 (Guilbeau Dep. 33:18-35:12); ROA.1684-1688) The district court correctly recognized that the nature of those payments, representative of greater than average work demands, differs from day rate pay Guilbeau earned

---

[3]   In 2018, Guilbeau received $175,300 in rig day rate compensation, about 290 rig day rate payments (Guilbeau's day rate started at $525 and increased to $625 in that year). (ROA.2843-2847; ROA.3727-3785) Guilbeau had 75 days off in 2018. (*Id.*) Accordingly, Guilbeau received rig and standby day rate payments for <u>every single day</u> that he worked in 2018.

In 2019, Guilbeau worked between January 1 and August 3 a period of 214 days. (*Id.*) Guilbeau's total rig day rate compensation was $78,125.00, 125 rig day rate payments at the $625 rate. (*Id.*) That year, Guilbeau had 84 days off. (*Id.*) Accordingly, in 2019, Guilbeau received rig day rate and two standby day rate payments for <u>all but five days</u> he worked for STC, because those days <u>were training days</u>. (*Id.*)

[4]   *See* 29 C.F.R. § 778.115 (Employees working at two or more rates.) ("Where an employee in a single workweek works at two or more different types of work for which different nonovertime rates of pay […] have been established, his regular rate for that week is the weighted average of such rates. […]")

simply by doing ordinary tasks. (ROA.3256) On reconsideration, the district court

continued to find that:

> [V]iewing the evidence in the light most favorable to Plaintiffs, the
> Court reasonably concludes that lesser payments received by Plaintiffs,
> *i.e.*, for […] carrying out duties with a reduced crew; working with
> specific tools or technologies; and for working as a lead, would fall
> under § 604(a). As previously discussed, these fall beyond the normal
> workweek."

(ROA.3798)

### 4. If the Day Rates Are, in Fact, Wages—STC Cannot Satisfy § 604(b)'s Reasonable Relationship Test.

The district court also found that ratio between Guilbeau's weekly

compensation and the total compensation was 1 to 5.9 in 2018 and 1 to 5.3 in 2019.

(ROA.2941) These ratios align with the ratios that violated § 604(b) in *Gentry II*,[5]

which were 1 to 5.42 for Terry Gentry and 1 to 5.19 for Marc Taylor. *Gentry II*, 102

F.4th at 724.

### 5. A Factual Dispute Precludes Summary Judgment as STC Has Not Proven It Could Withhold Day Rates Based on Any Criteria.

Ultimately, though, the district court repeatedly found that a genuine dispute

of material fact precludes summary judgment: whether the rig day rate pay at issue

was "a bonus for occasional work activities" that could fall within § 604(a), or

---

[5] *Gentry v. Hamilton-Ryker IT Sols., L.L.C.*, 102 F.4th 712 (5th Cir. May 24, 2024) (*Gentry II*).

payment for wages to which § 604(b) would apply. (ROA.3248-3249; ROA.3887-3888 ("The Court has recognized a genuine dispute of material fact as to whether Guilbeau was paid bonuses for work beyond the normal workweek or whether the non-salary compensation was part of their base compensation calculated on a daily rate."))

Specifically, STC claims that Guilbeau's day rates could have been withheld based upon an unproven and self-serving provision of its "Job Bonus Terms & Conditions." (ROA.1684-1688) But STC has provided no record evidence showing it has ever withheld day rate compensation <u>on any basis</u>. In contrast, Guilbeau has provided testimony that all that was required for him to earn day rate compensation was to work on a rig, his testimony and STC's records reflect that all he ever did was work on rigs, and he has never testified that his compensation was conditional.[6] (Record Excerpts, Tab 8 (Guilbeau Dep. 28:18-29:6 ("We were all paid day rates. [...] [W]e got paid day rates for when we got on the rig.")); Record Excerpts, Tab 8 (Guilbeau Dep. 27:24-28:3 ("I'm a directional driller. Put me on a rig, I could drill.")); ROA.3727-3785) Even STC's own 30(b)(6) corporate representative did not identify any job duties of a DD that took place off a customer's drilling rig.

---

[6]    This sharply contrasts with Jack Venable's testimony. (*See* Record Excerpts, Tab 7 ("Q: [...] [I]f you were doing chargeable work for a client, you got your day rate; is that correct? A: For the most part, yeah. I mean, there was some overlap. Sometimes I would get it, just depends.".)

Case: 25-50594    Document: 50-1    Page: 18    Date Filed: 01/05/2026

(ROA.582-583 (30(b)(6) Dep. 21:5-22:17; ROA.604-609 (30(b)(6) Dep. 43:11-48:10))

Thus, the district court appropriately considered the economic reality of the compensation and found that STC had not carried its burden. Thus, because STC has not yet provided evidence to carry its burden on its affirmative defense (ROA.3253), an ongoing dispute exists as to whether STC paid a "hybrid salary plus bonus" which would satisfy § 604(a), or a "hybrid salary plus day rate" which would invoke § 604(b). (ROA.3255-3256)

## B.    Relevant Procedural History

### 1.    Initial Pleadings and STC's Repeated Motions to Dismiss

This case has an extensive procedural history, which Guilbeau strives to streamline. Guilbeau filed this lawsuit on February 21, 2021. (ROA.24-34) STC twice[7] moved to dismiss the lawsuit (ROA.45-52; ROA.95-110), but the district court denied its motion in a detailed, thirteen-page order, which, in opposition to STC's claims,[8] plainly addressed its argument as to whether Guilbeau's allegations stated a claim. (ROA.222-234) The district court found that Guilbeau stated a plausible claim that STC's pay structure violated the FLSA and that Guilbeau's pleadings did not on their face establish STC's claimed exemptions. (*Id.*)

---

[7]    Guilbeau mooted the first motion by amending his complaint. (ROA.62-71)

[8]    (Defendant-Appellant Br., p. 6)

7

### 2. Phase One *Swales* Discovery and STC's Motion for Summary Judgment

About one year and two months since the case was filed, it proceeded through approximately six months of phase one *Swales*[9] discovery. (ROA.469-470) Guilbeau moved for issuance of notice under *Swales* on December 22, 2022. (ROA.544-560) STC countered with a motion for summary judgment a few months later, arguing Guilbeau was exempt from overtime wage payment as a matter of law.[10] (ROA.2634-2658)

On July 7, 2023, the magistrate judge entered a report and recommendation denying STC's request for summary judgment and an order granting in part and denying in part Guilbeau's request for notice under *Swales*, which was later affirmed by the district court. (ROA.2924-2954) (ROA.3230-3269) The court concluded a genuine factual dispute regarding the nature of the day rate pay at issue that precluded summary judgment. (*Id.*)

---

[9]  *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021).

[10]  In keeping with its habit of attempting to "leapfrog" to the head of the line (ROA.3584-3585), STC also requested that the district court reorder the motions to consider its motion for summary judgment before Guilbeau's motion for notice under *Swales*. (ROA.2781-2797)

8

### 3.     STC's Extraordinary Writs and Interlocutory Appeal

Before this current appeal, STC sought leave to appeal the district court's interlocutory denial of its summary judgment motion. (ROA.3270-3282 (March 11, 2024)) The district court denied the motion. (ROA.3343-3349 (April 16, 2024))

STC twice sought mandamus, unsuccessfully seeking to block Guilbeau's progress to trial. On April 17, 2024, STC sought mandamus regarding issuance of notice (ROA.3350-3393), but the Fifth Circuit found STC's request premature. (ROA.3399-3401) STC again sought mandamus on (ROA.3476-3519), which was denied. (ROA.3581-3585) In denying this second request for mandamus, this Court found, based on the same record before it now, that STC's position was "far from clear or indisputable," particularly in light of *Gentry II*. (*Id.*)

Following the publication of in *Gentry II*, the district court briefly stayed the case to carefully consider the developing caselaw. (ROA.3600-3602) After the Court handed down *Venable*, STC filed another motion for reconsideration. (ROA.3647-3659) After a thorough review, the district court again denied STC's motion for summary judgment, reaffirming that the nature of the day rate pay remained a triable question of fact. (ROA.3790-3810)

After STC's repeated request (ROA.3815-3831), the district court certified the case for interlocutory appeal on June 2, 2025. (ROA.3879-3904)

### 4.     Current Status of the Collective Action

During the pendency of the appeal, approximately 2 years and 2 months after the magistrate judge's order granting issuance of notice under *Swales*, and despite STC's repeated (and erroneous) complaints that a resolution of the *ultimate issue* in this lawsuit is a threshold issue precluding issuance of notice,[11] the collective action members received notice of the litigation. (ROA.21 (Text Order granting extension to send notice to collective action members)) Thirty STC DDs joined the lawsuit. (ROA.21-23) Trial proceedings are currently stayed by agreement of the parties.

In sum, for nearly five years STC has repeatedly attempted to stymie Guilbeau's progress to trial on the merits. At every turn, the district court has unflaggingly, and correctly, found that fact issues surrounding the "economic reality" of STC's wage payment scheme precludes summary judgment or judgment on the pleadings. Given the district court's solid reasoning, the Fifth Circuit should remand the case for a resolution on the merits.

---

[11] This Court disagreed. (*See* No. 25-90016, Doc. 37-2) (denying stay of trial court proceedings to avoid issuance of notice to collective action members)

## IV.    RULINGS PRESENTED FOR REVIEW

STC seeks review of the magistrate judge's Report and Recommendations and Order (ROA.2924-2954), as adopted by the district court in its Memorandum Opinion and Order (ROA.3230-3269), and of the district court's ruling on reconsideration (ROA.3790-3810). The district court's ruling on STC's motion to certify interlocutory appeal also contains relevant analysis. (ROA.3879-3904)

## V.    SUMMARY OF ARGUMENT

It's difficult to picture a wage that you don't earn every day. But similarly, it's tough to visualize a bonus that you earn every day just for turning up and doing your ordinary job duties. This case rests on these simple realities about wage payment.

STC claims that *Venable*[12] requires this Court to overturn the district court's decision denying STC summary judgment here. In *Venable*, a group of reamers earned a "true salary" pursuant to 29 C.F.R. § 541.604(a), because the extra compensation they earned on top of their salary was in the form of a bonus. Under § 604(a), *bona fide* bonuses explicitly may be paid as additional compensation to an exempt, salaried employee for work beyond the normal workweek without violating the FLSA. This is nothing new. The Fifth Circuit had already found a similar pay

---

[12]    *Venable v. Smith Int'l, Inc.*, 117 F.4th 295 (5th Cir. 2024).

11

practice complied with § 604(a) in *Hebert*,[13] which the district court here considered long before the ruling in *Venable*. (ROA.2938; ROA.3247-3248)

Jack Venable's own testimony, and the undisputed testimony of his reamer co-workers, was that Smith did not always pay a day rate. (*See* Record Excerpts, Tab 7) Venable only earned day rate compensation for chargeable work on Smith's customer rigs, which was nothing like 100% of his work days. (*Id.* ("Sometimes I would get it, it just depends")) Per Mr. Venable, if he worked a full week in Smith's shop, he only received his salary. (*Id.*) This directly mirrors the bonus structure of *Hebert*, where the employee was generally an office worker who sometimes earned extra payment for the inconvenience of providing services on an offshore rig. *Hebert*, 2023 WL 4105427, at *1 ("Stated differently, these engineers work in office environments and *occasionally* visit offshore sites to assist with the installation of FMC equipment." (emphasis added)).

In stark contrast, Guilbeau contests the nature of his day rate compensation, it is a wage and not a bonus. This is because Guilbeau could not perform his job duties without a rig, and his testimony is that his day rate compensation was not a bonus for additional or extraordinary work but simply wages for performing his ordinary job duties within the normal workweek. Again, in sharp distinction from *Venable*,

---

[13]  *Hebert v. FMC Techs., Inc.*, No. 22-20562, 2023 WL 4105427 (5th Cir. June 21, 2023).

12

Guilbeau earned his day rate every single day that he performed his job duties for STC. (ROA.1637-1638 (Guilbeau Dep. 33:18-34:10); ROA.3727-3785) STC disputes Guilbeau's testimony, and, as the district court has repeatedly held, a fact issue remains to be determined at trial. (ROA.3803; ROA.3805-3806)

Still, STC levels three arguments under *Venable* that must fail in Guilbeau's situation: (1) "Smith is an affiliated company to STC and utilizes substantially the same pay structure"; (2) the day rate is "revenue-based"; (3) STC's contested claim that Guilbeau's day rates were not paid to him unconditionally. (Defendant-Appellant Br., pp. 4-5, 15 44)

First, it is irrelevant that Smith is a related entity, especially where, as stated above, the pay practice is *not* substantially the same. Even within a single organization, different pay practices may be unavailable to discrete sets of workers. This is why the Fifth Circuit recently clarified the more searching standard of *Swales*.[14] Indeed, under *Swales* the reamers in *Venable* would hardly be similarly situated to STC's DDs. They perform different duties, under a different pay practice, and the FLSA makes clear that employees are not bound by unfavorable judgments unless they affirmatively opt-in to a collective action. 29 U.S.C. § 216(b).

---

[14]    *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021).

Second, although Guilbeau's day rate compensation was paid out of revenue from STC's customers—STC's 30(b)(6) corporate representative testified that all STC's revenue comes from billing its customers. (ROA.656 (30(b)(6) Dep. 95:18-23)) Thus, Guilbeau's non-compliant "salary" also flowed directly from STC's revenue derived from customer billing. The revenue-based distinction is thus immaterial. Rig day rates were not variable "bonuses" or "profit-sharing" type commissions paid based on performing any special duties. His day rate compensation did not vary if one customer paid STC more than another. (ROA.2843-2847; ROA.1686) His day rate compensation was never variable, nor could it be increased by doing the job more efficiently. Rather, rig day rate compensation was a flat rate which was always tied to days worked rather than results achieved. All it took for Guilbeau to earn his day rate was to show up and do the job he was hired to do, and he would be paid a flat rate every day he did so. (ROA.1637-1638 (Guilbeau Dep. 33:18-34:10)) It is just hard to grasp how a day rate could be considered a "bonus" if the consequence of failing to "earn" the bonus would be job abandonment.

Third, STC claims the day rate was a bonus because it was not paid unconditionally. STC argues that its bonus policy stipulates STC's right to withhold

14

payments for issues such as customer complaints[15] or serious safety or performance issues. (Defendant-Appellant Br., p. 4) But STC merely highlights the exact disputed issue of material fact that has cause the district court to withhold summary judgment in its favor all along. (ROA.3803; ROA.3805-3806) Guilbeau disputes that as a matter of economic reality STC could or would withhold the day rate on any basis. Even with all its extensive recordkeeping, STC has provided <u>no record evidence</u> showing it ever withheld rig day rate compensation. On the other hand, Guilbeau's testimony was that all he had to do to earn this supposed "bonus" was to show up during his normal workweek and perform his ordinary job duties. (ROA.1637-1638 (Guilbeau Dep. 33:18-34:10)) Thus, even if STC would or could have docked Guilbeau's pay under some hypothetical circumstance, that would not change its character as daily wages earned within the normal workweek, triggering the analysis of § 604(b)'s reasonable relationship test. In other words, the factual question becomes: is Guilbeau really paid a "true salary," and the day rate pay is "extra" or is he really paid by the day, and the supposed "salary" compensation is extra? That is what the district court found here: "[v]iewing the facts of this case in the light most favorable to Plaintiffs, the economic realities are that Defendant paid Plaintiffs a

---

[15] A cursory reading of STC's self-serving, and, as discussed further below, unproven policy reveals that STC's argument is misleading: there is no provision regarding broad "customer complaints," but rather failure to do the job. (ROA.1684-1688)

15

salary to be 'on-call 24/7,' while receiving a day rate as part of the base compensation for doing their job." (ROA.3804)

Furthermore, Guilbeau did earn actual bonuses that, in the absence of his rig day rate compensation, inarguably would have been compliant with § 604(a), which highlights even more the distinction between the two types of compensation. (ROA.1637-1640 (Guilbeau Dep. 33:18-35:12); ROA.1684-1688)) Those bonuses, for being the lead on a rig or running with a reduced crew, were conditional and not pay for ordinary work—in other words—additional compensation for work beyond the normal workweek. (*Id.*) If those were the only types of compensation at issue— Guilbeau would have no claim just as Jack Venable and Brent Hebert had no claim. Rather, as discussed further below, Guilbeau's compensation structure under the current record mirrors Terry Gentry's in all relevant particulars, and as the district court properly held, *Gentry II* governs.

In sum, *Venable* is just like *Hebert*, and neither applies to the facts here. Those cases do not apply just because Guilbeau worked in the oil and gas industry, or because STC has a long running pay practice, and they do not apply because of a self-serving and unproven policy that Guilbeau disputes as a matter of economic reality.

Finally, as opposed to the procedural history of *Venable*, where the plaintiffs themselves moved for summary judgment, Guilbeau has not sought summary

16

judgment. Consequently, disputed facts and disputed inferences are to be taken in his favor, both at the district court and here on appeal. *Impossible Electronic Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 662 F.2d 1026, 1031 (5th Cir. 1982). STC glosses over this point in its dogged pursuit of an easy out. As discussed further below, STC's standard of review gravely misleads the Court as to its role, failing even to acknowledge that it bears the burden of proof of its affirmative defense. (Defendant-Appellant Br., pp. 21-22) Thus, STC must prove as a matter of law that its pay practice complies with the FLSA as a matter of economic reality, and for all the reasons that it has failed to convince the district court, it cannot convince this Court now.

Thus, STC cannot escape the district court's proper reliance on *Gentry II*.[16] And, to be clear, to the extent that *Venable* in any way conflicts with *Gentry II*, *Gentry II* controls. *U.S. v. Wheeler*, 322 F.3d 823, 828 n.1 (5th Cir. 2003). In pages of painstaking detail, the district court explained its view of the analysis under *Gentry II*, and followed that analysis to the unavoidable conclusion: whether STC paid Guilbeau a day rate as a bonus or as wages remains to be determined. (ROA.3790-3810; ROA.3879-3904)

---

[16]  *Gentry v. Hamilton-Ryker IT Sols., L.L.C.*, 102 F.4th 712 (5th Cir. May 24, 2024) (*Gentry II*).

Beyond *Venable*, STC's argument relies on reiterating misunderstandings of the regulations and caselaw which are long-since clarified. For instance, STC poaches from Justice Kavanaugh's dissent in *Helix*[17] the claim that § 604(b)'s reasonable relationship test does not apply because the highly compensated employee ("HCE") exemption[18] permits a "three-to-one ratio between salary and total compensation." (Compare *Helix*, 598 U.S. at 66 *with* Defendant-Appellant Br., p. 31) But both Justice Kavanaugh and STC ignore § 604(a). In fact, total HCE compensation could be driven almost entirely by "extras" so long as those extras are not wages based on time worked in the normal workweek. 29 C.F.R. § 541.604(b) (reasonable relationship applies only when the compensation is based on hours, days or shifts worked, it does not apply to compensation that is truly "additional" compensation for work beyond the "normal workweek" whether for additional hours or better, more productive work).

Critically, § 604(b) is exceedingly narrow. Employers are left with a great deal of flexibility to pay additional compensation under § 604(a), like STC did here with lead and reduced crew bonuses. Under § 604(a), employers can recognize exemplary salaried employees by awarding a percentage of store profits or pay salaried employees who must work more than their standard workload on occasion. The only

---

[17]  *Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39 (2023).

[18]  *See* 29 U.S.C. § 213.

thing § 604(b) prohibits is what STC wishes to do—guarantee a token "salary," but tie actual wages for a normal workweek to time spent working in that workweek.

Guilbeau easily dispatches the remainder of STC's argument claiming that the district court committed reversible error in other aspects of its decision-making. The district court correctly applied relevant standards when evaluating the magistrate judge's rulings, or, to the extent that it did not, such error was harmless. The district court properly found that resolution of the material liability fact issue as to STC's affirmative defense was not a "threshold issue" under *Swales*. In other words, nothing in *Swales* requires that employees mount summary judgment style evidence *disproving* an employer's affirmative defense before they can send notice of a lawsuit. And last, the district court did not err in finding STC judicially estopped from challenging DOL's authority to regulate the salary basis test. STC's argument was time barred under the APA,[19] and even if the district court had jurisdiction to review, STC's argument is foreclosed by the Fifth Circuit's ruling in *Mayfield v. United States Department of Labor*, 117 F.4th 611 (5th Cir. 2024), a controlling case which STC never cites.

---

[19] *See, e.g.*, *State v. Rettig*, 987 F.3d 518 (5th Cir. 2021) (noting six year statute of limitations from "final agency action"). Section 604 has been the law since April 23, 2004. 69 Fed. Reg 22122-01, 2004 WL 865626 at *22271 (April 23, 2004).

In sum, neither before the district court nor here has STC demonstrated its entitlement to the dismissal of Guilbeau's claims. Guilbeau respectfully requests that this Court remand his case for further proceedings.

## VI.    ARGUMENT

### A.    The District Court Correctly Denied STC Summary Judgment Because a Genuine Issue of Material Fact Precludes Disposal of Guilbeau's Claim.

### 1.    Standard of Review

The Fifth Circuit decides whether a district court errs in granting summary judgment "de novo" meaning that it applies "the same legal standards the district court applied […]" anew. *Union Pac. R.R. Co. v. City of Palestine*, 41 F.4th 696, 703 (5th Cir. 2022) (quoting *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 259-60 (5th Cir. 2003).

STC sought summary judgment as to liability and bears the burden of proof on its allegation that Guilbeau is exempt under the FLSA. *See Gentry II*, 102 F.4th at 724 (citing *Cunningham v. Circle 8 Crane Servs, L.L.C.*, 64 F.4th 597, 600 (5th Cir. 2023) (employer bears the burden to establish a claimed exemption under the FLSA)). As a movant with the burden of proof, STC's burden is particularly heavy; it must "establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original) "Only if the movant succeeds must the

nonmovant designate specific facts showing that there is a genuine issue for trial."

*Cunningham*, 64 F.4th at 600 (quoting *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021)).

STC's brief misstates the standard of review by ignoring its trial burden and its summary judgment burden. (Defendant-Appellant Br., pp. 21-22) Because STC failed to meet its burdens, the district court correctly denied summary judgment and STC's repeat requests for reconsideration.

> **2.    STC Has Not Established It Complied with the Salary Basis Test as a Matter of Law.**

In dozens of pages of painstaking reasoning, applying the precedent of this Court in its proper order, the district court has repeatedly identified a fact issue left to be determined at trial: "the Court has recognized a <u>genuine dispute of material fact</u> as to whether plaintiffs were paid bonuses for work beyond the normal workweek or whether the non-salary compensation was part of their base compensation calculated on a daily rate" (ROA.3888 (emphasis added)); "Defendant's argument ignores the <u>factual underpinnings</u> for the summary judgment denial" (ROA.3803 (emphasis added)); "There remains a <u>dispute</u> as to whether the day-rate portion of Plaintiffs' compensation was part of the base compensation or constitutes or constituted additional compensation within the scope of § 604(a) and thus outside the purview of § 604(b)." (ROA.3253 (emphasis added)). And

regardless of certifying this case for interlocutory appeal,[20] the district court has not walked back its conclusion that a <u>fact</u> issue precludes resolution of this case on summary judgment. (ROA.3890 ("The Court described the dispute multiple times. [...] This Court has made no determination as a matter of law regarding the salary basis element of Defendant's affirmative defense."))

The district court has always made clear that if STC could show that the day rate portion of Guilbeau's compensation "constituted additional compensation within the scope of § 604(a) and thus outside the purview of § 604(b)," it could win this lawsuit. (ROA.3253) Whether that factual showing will be difficult for STC, given that it paid Guilbeau this category of day rate compensation for every day he performed job duties for STC,[21] is not a reason to delay trial.

3. **The District Court Understood the Relevant Regulatory Framework Applied in *Helix* and *Gentry II*—STC Misunderstands that Framework.**

As established in *Helix*,[22] just because an employer purports to pay some wages labeled "salary" or "minimum weekly guarantee" does not mean that the

---

[20]    The district court noted that the propriety of interlocutory appeal may be valid even if the court is "confident in its decision." (ROA.3880 (quoting *Greinstein v. Granite Servs. Int'l, Inc.*, No. 2:18-CV-208-Z-BR, 2023 WL 5167606, at *3 (N.D. Tex. June 28, 2023)))

[21]    (ROA.2843-2847; ROA.3727-3785)

[22]    *Helix Energy Sols. Grp. Inc. v. Hewitt*, 598 U.S. 39, 143 S. Ct. 669 (2023).

employer has paid a salary under § 602(a) nor does it obviate the need for the reasonable relationship test under § 604(b). Rather, a "minimum weekly required amount" is just the first prong under 29 C.F.R. § 541.604(b). The second prong requires the "guaranteed amount" to bear a reasonable relationship to the "usual earnings at the assigned hourly, daily or shift rate." *Id.*

In *Gentry*,[23] the plaintiff earned a weekly amount of $984, which his employer claimed was a "salary." However, his employer paid him $123 per hour for all hours worked after the first eight. Because those hourly rate compensated hours were "*within* the normal workweek," the Fifth Circuit applied the reasonable relationship test in 29 C.F.R. § 541.604(b) to determine whether Terry Gentry was paid on a "salary basis." *Id.* at 722 It found Terry Gentry was not paid on a "salary basis," and was owed back overtime pay. *Id.* at 725.

Thus, *Helix* and §§ 602(a), 604(a) and 604(b) require courts to take a hard look at whether a purported "salary" truly compensates employees for a week's worth of work or, instead, provides an artificial distinction between a salary and wages paid on a less frequent basis. *Id.*

The district court extensively reviewed the Supreme Court's *Helix* opinion and *Gentry II*, and followed the relevant regulatory framework exactly. (ROA.3241;

---

[23] *Gentry v. Hamilton-Ryker IT Sols., L.L.C.*, 102 F.4th 712 (5th Cir. 2024) (*Gentry II*).

ROA.3799) The district court soundly rejected STC's position that "§ 604(b) applies only when an employee's compensation consists of a day rate and a day rate only," especially given § 604(b) specifically discusses a minimum weekly guarantee or "guaranteed salary," and found that the case involves a "hybrid pay structure that has an undisputed salary component along with a second component that may or may not relate to the Plaintiffs' base compensation." (ROA.3241)

Again, there is no evidence here of a district court committing error. Rather the district court is simply reading precedential opinions and carefully applying them to the facts where the supposedly compliant "salary" paid to Guilbeau did not come close to covering his normal, weekly pay, and fluctuated dramatically based on the number of days worked.

Still, STC argues that the district court erred by applying the distinction between time-based pay earned during the normal workweek contained in the regulations contained in the regulations and explained by *Gentry II*.

First, STC poaches from Justice Kavanaugh's dissent in *Helix*[24] to claim § 604(a)'s reasonable relationship test does not apply because the highly compensated employee ("HCE") exemption[25] permits a "three-to-one ratio between salary and total compensation." (Compare *Helix*, 598 U.S. at 66 *with* Defendant-

---

[24] *Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39 (2023).

[25] *See* 29 U.S.C. § 213.

24

Appellant Br., p. 36) But both Justice Kavanaugh and STC ignore § 604(a). In fact, total HCE compensation could be driven almost entirely by "extras" so long as those extras are not tied to "hours, days, or shifts" worked in the "normal workweek[.]" 29 C.F.R. § 541.604(a). For example, a worker could earn commissions (not base wages) that cause them to be highly compensated exempt, something that can and does happen.

It also claims that "a sales commission earned by a store manager is obviously earned during the normal workweek." (Defendant-Appellant Br., p. 37) This argument is a red herring because the regulations have two parts: § 604(a) concerns truly additional, non-guaranteed compensation that is earned on an irregular basis, e.g., not daily, by shift, or hourly. A commission is a performance-based incentive that fluctuates based on results, not the quantity of time worked. In contrast, Guilbeau's day rate expressly comes within § 604(b) because it is a flat rate computed on a "daily" basis for his normal work at the worksite during the normal workweek. Section 604(b) even specifically discusses this: "The reasonable relationship requirement applies only if the employee's pay is computed on an hourly, daily or shift basis. It does not apply, for example, to an exempt store manager paid a guaranteed salary per week that exceeds the current salary level who also receives a commission of one-half percent of all sales in the store or five percent

of the store's profits, which in some weeks may total as much as, or even more than, the guaranteed salary."

4.  **FLSA First Principles Require Courts to Look Beyond Labels to Determine the Real Character of an Employer's Compensation Scheme.**

>    *a. As a Matter of Economic Reality, Guilbeau's Day Rate Compensation Illustrates Perfectly the Concept of "Masked" or "Hidden" Wages.*

One of the most important features of the FLSA is the concept of "economic reality." This concept applies to all aspects of the FLSA, from determining the existence of an employment relationship to the application of FLSA exemptions. *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 346 (5th Cir. 2008) ("subjective beliefs cannot transmogrify objective economic realities" (quoting *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1049 (5th Cir. 1987))); *Brock*, 814 at 1047 ("[I]t is not what the [parties] *could* have done that counts, but as a matter of economic reality what they actually *do* that is dispositive."); *Taylor v. HD & Assocs., L.L.C.*, 45 F.4th 833, 839 (5th Cir. 2022) (per curiam) (exemptions apply based on "how a payment works in practice, rather than what it is called"). The concept is particularly relevant where an employer wishes to artificially obscure the nature of compensation, that is "mask wages."

Consider employers who attempted to mask wages by, for instance, providing supposed "*per diem*" pay to workers who incurred no expenses while performing

duties for the employer. In *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1041 (5th Cir. 2010), this Court found that an employer had tried to avoid paying an employee a higher "regular rate" of overtime pay by "artificially designating a portion of Gagnon's wages as 'straight time' and a portion as 'per diem.'" Citing 29 C.F.R. § 778.108, the Court found the "regular rate" of pay "cannot be left to declaration by the parties as to what is to be treated as the regular rate for an employee; it must be drawn from **what happens under the employment contract.**" *Id.* (emphasis added). In other words, the employer's label of the compensation as "per diem" was not dispositive. Rather the economic reality was properly illustrated by the actual employment conditions:

> Furthermore, we are suspicious of [the employer's] claims that [the employee's] employment contracts were not a scheme to avoid paying overtime. **It is difficult to believe that a skilled craftsman would accept a wage so close to the minimum wage when the prevailing wage for similarly skilled craftsmen was approximately three times the minimum wage.** We are similarly troubled by the fact that the combined "straight time" and "per diem" hourly rates approximately match the prevailing wage for aircraft painters. […]

*Id.* (emphasis added).

In all events, a court is not bound to the characterization or a label promoted by an employer. A label is "dispositive only to the degree that it mirrors the economic reality of the relationship." *Donovan v. Tehco, Inc.*, 642 F.2d 141, 143 (5th Cir. 1981). *Taylor*, 45 F.4th at 839 (the nature of a payment for purposes of FLSA

27

exemptions "relies on how a payment works in practice, rather than what it is called").

Accordingly, the mere fact that STC now labels the compensation Guilbeau received for each work day "rig bonus pay"[26] is insufficient to establish the district court erred. Indeed, the idea Guilbeau would accept a "salary" representing only a fractional interest of his total compensation should arouse the same suspicion of the Court as in *Gagnon*. There, the prevailing wage was three times the minimum wage the employer called the employee's "straight time" hourly rate. Here, Guilbeau's supposed "salary" would have amounted to $47,476 a year, a rate of pay no directional driller (particularly not one of Guilbeau's qualifications) would accept. As a matter of economic reality, Guilbeau's wages in 2018, including only his supposed "salary" ($43,824.00) and his day rate pay ("rig day rate" and "standby rate" of $175,562.50) total to $219,386.50.[27]

---

[26]    Notably Guilbeau's paystubs call this compensation "Rig Day Rate" or "Standby Rate," which differs the compensation from other actual bonuses such as "Lead Bonus" or "Reduced Crew Incentive" Pay. (ROA.2843-2847)

[27]    Guilbeau's total compensation in 2018, including non-discretionary bonuses, was $245,711.50. (ROA.2843-2847) Thus, a more satisfactory salary that protected Guilbeau's actual wages would have been in the vicinity of $220,000.00 per year. This makes clear that the non-discretionary bonuses are *actually* bonuses like Brent Hebert received, since Hebert's bonuses only represented approximately **35%** of his total compensation. (Record Excerpts, Tab 6) Guilbeau's day rates, on the other hand, represented approximately **71%** of his total compensation.

Clearly, Guilbeau would not agree to a "salary" of $47,476 when he expected to gross $219,386.50 in annual wages alone. Similarly, Terry Gentry[28] would not have accepted a "salary" of $51,168 when he expected to gross $329,246.32 in annual wages.[29] On the other hand, Brent Hebert was probably delighted with his $90,000 salary, even if he had never received a single bonus for offshore work, given his total compensation in 2019 was only $137,673.48.[30] Indeed, the district court suspected STC was masking wages by artificially designating less than a day and a half's actual pay as "salary":

> Plaintiff Guillbeau's [sic] guaranteed weekly salary was $913 with a day rate of $625. His weekly guarantee was less than a day and a half calculated from his day rate. For a full week of work, the guaranteed amount is about **22.6% of the total paycheck**. Although this case involves a day rate rather than an hourly rate, the guarantee **still appears illusory** rather than a true salary at a weekly rate. And a review of *Gentry II* reveals an appellate decision fully supportive of this Court's prior denial of summary judgment.

---

[28] *Gentry v. Hamilton-Ryker IT Sols., L.L.C.*, 102 F.4th 712, 724 (5th Cir. 2024) (*Gentry II*) (Terry Gentry's weekly guaranteed amount was $984.00, Marc Taylor's weekly guaranteed amount was $1,200.00, but the hourly amounts paid to them on a weekly basis far exceeded those sums, for Mr. Gentry, $5,347.66 per week and for Mr. Taylor $6,228.57 per week, on average).

[29] *See Gentry II*, 102 F.4th at 721. ("Nor can HR-IT reasonably argue that eight hours of pay constitutes a "weekly rate." Far from it, Plaintiffs' 'guaranteed weekly salary' typically accounted for less than **20% of their total paychecks**." (emphasis added)).

[30] (Record Excerpts, Tab 6 (Hebert's salary reflected approximately **65% of his total compensation**))

29

(ROA.3798 (emphasis added)) As discussed further below, the illusory nature of an artificially low salary paired with hourly or daily rate compensation is an attractive "masked wage" because it permits employers to take otherwise impermissible deductions from the compensation of an employee who might otherwise be exempt. *See* 29 C.F.R. § 541.602(b)(3).

In sum, the sheer concentration of compensation in unpredictable day rate pay as opposed to regularly anticipated weekly "salary" should trigger a court to investigate the economic realities of a pay practice like STC's, which is exactly what the district court did. *Hewitt v. Helix Energy Sols. Grp., Inc.*, 15 F.4th 289, 291 (5th Cir. 2021), *aff'd*, 598 U.S. 39 (2023) ("we do not ordinarily think of daily or hourly wage earners—whose pay is subject to the vicissitudes of business needs and market conditions—as 'salaried' employees").

> b. *Guilbeau's Day Rate Compensation, Regardless of Its Inclusion on a Policy Document Commingling Day Rate and Non-Discretionary Incentive Bonuses, Does Not Constitute Bonus Pay.*

A "bonus" is "something in addition to what is expected or strictly due: such as (a) money or an equivalent given **in addition** to an employee's **usual** compensation […]" https://www.merriam-webster.com/dictionary/bonus Indeed, regulations to the FLSA define the term bonus as "properly applied to a sum which is paid as an addition to total wages usually because of **extra effort** of one kind or another, or as a **reward for loyal service** or **as a gift**. The term is improperly applied

30

if it is used to designate a portion of regular wages which the employee is entitled to receive under his regular wage contract." 29 C.F.R. § 778.502(a) (emphasis added).

The day rate pay Guilbeau earned, which STC now artificially labels as a "bonus" in an attempt to bring its pay practice nearer to cases like *Hebert*[31] and *Wilson*,[32] was not a bonus. It was not a premium for extra work, nor was it conditioned upon performing work in a specific way. Indeed, STC did pay Guilbeau actual bonuses. According to STC's own policy, day rate compensation is paid for ordinary work: "RIGB is the Rig-site Day Rate Bonus for the field crew and will be paid to all members of the field crew performing shift duty (tour) while at the rig-site." (ROA.1684-1688) All that is required is that a DD show up and do his job as a DD to receive this type of compensation. Similarly, STC pays standby day rates for days when DDs are required to be onsite but not performing their standard DD job duties. (*Id.*)

In stark contrast, STC offers bonuses which require more than performing ordinary job duties to earn. For instance, a lead bonus: "The purpose of having the lead bonus is to compensate employees for having less competent second hands such as trainees and contractors." (*Id.*) Similarly, STC offers a reduced crew incentive

---

[31]   *Hebert v. FMC Techs., Inc.*, No. 22-20562, 2023 WL 4105427 (5th Cir. June 21, 2023)

[32]   *Wilson v. Schlumberger Technology Corp.*, 80 F.4th 1170 (10th Cir. 2023).

31

bonus: "Cross trained DDs are eligible for Reduced Crew Incentive Bonus when they cover and are responsible for service delivery of the DD as well as the MWD services during their shift, in the absence of Remote Operations." (*Id.*) In other words, STC passes *some* of the benefit of staffing shortages to its overhead along to the employees who must take on additional work in light of those shortages. These are bonuses because they are conditioned upon *something* other than time worked, performing ordinary job duties, in a normal workweek.

Comparing these discrete categories of pay with cases like *Hebert* and *Wilson* is illuminating.

> i.      Hebert *Confirms Employers Can Pay Bona Fide Bonuses as Additional Compensation to Salary Exempt Employees for Work Beyond the Normal Workweek Without Becoming Liable to Pay Overtime Wages.*

In *Hebert*, the employee worked as an installation engineer. His job duties involved "(1) creat[ing] technical procedures for installation projects, (2) analyz[ing] and interpret[ing] information, (3) review[ing] engineering designs and documents, and (4) consult[ing] with other departments on designs." *Id.* at *3. When that work was complete, he would visit offshore drilling sites to review installation of drilling equipment. *Id.* Then he returned to his office to conduct in-office reviews of the project. The employee typically "work[ed] in office environments and [only] occasionally visit[ed] offshore sites." *Id.* at *1. Only when he worked on offshore

32

drilling sites, his employer afforded him some extra pay much in the nature of a shift differential[33] or bonus[34] called a "field service premium." *Id.* When Hebert simply performed his normal services, even for a full workweek, he received only his salary.

Although a bonus or a shift differential would be included in the calculation of overtime premium pay for non-exempt employees, the Fifth Circuit correctly held that it is clearly of such a character[35] to fit squarely within the types of additional compensation that may be paid to salaried employees without losing the exemption. *See* 29 C.F.R. § 541.604(a) ("bonus payments" are additional compensation that do not cause an employer to lose an exemption or violate the salary basis requirement). So, both the federal district court and the Fifth Circuit decided *Hebert* correctly.

To be sure, if Guilbeau based his case solely on the lead bonuses or reduced crew bonuses paid to him, his case should have been dismissed at summary judgment under § 604(a). But Guilbeau never agreed, despite STC's labeling, that the day rate

---

[33] *See* 29 C.F.R. § 778.207(b) ("The Act requires the inclusion in the regular rate of such extra premiums as nightshift differentials (whether they take the form of a percent of the base rate or an addition of so many cents per hour) and premiums paid for hazardous, arduous or dirty work.").

[34] 29 C.F.R. § 778.502(a) ("The term 'bonus' is properly applied to a sum which is paid as an addition to total wages usually because of **extra effort** of one kind or another, or as a **reward for loyal service** or **as a gift**. The term is improperly applied if it is used to designate a portion of regular wages which the employee is entitled to receive under his regular wage contract.") (emphasis added).

[35] *See* 29 C.F.R. § 541.604(a) (expressly noting that bonus payments may be made to salary-exempt employees without losing the exemption).

33

at issue is a bonus. He absolutely does not base his claim on additional compensation that was paid rarely, for out-of-scope work, or as a reward for loyal service. Instead, Guilbeau bases his claim on the day rate STC paid for doing his day-to-day job duties, and that he earned every single day that he worked apart from a handful of training days.

The district court recognized the thrust of *Hebert*, distinguished from the compensation STC paid to Guilbeau as well:

> The Magistrate Judge distinguished *Hebert* on grounds that the case did not consider the argument at issue here that the asserted bonus payment was not a bonus or premium payment at all, but rather a day rate for base compensation for a normal workweek. […] As a premium, the bonus **is not for an employee performing base duties under typical circumstances.** But rather, such premium appears to be a bonus for performing duties outside the ordinary circumstances of the position, like the tech, reduced crew, and lead bonuses at issue in this case.

(ROA.3247-3248)

> ii.    *In* Wilson, *Despite Reasoning Criticized by this Court, STC Could Be Found, like* Hebert, *to Have Complied with § 604(a) Due to the Infrequency of Payment of Additional Compensation.*

After *Hebert*, the Tenth Circuit issued its opinion in *Wilson*. While decided on other grounds, notably grounds the Fifth Circuit disagrees with (discussed further below), *Wilson* still squares with the bonus for extraordinary work versus wages for ordinary work dichotomy of additional compensation under § 604. As would later be recognized by the Sixth Circuit:

34

> At issue was the status of one of [STC's MWD] engineers, who received a fixed biweekly payment of $924 and additional hourly pay for time spent with a customer (if on standby, $102.50 per hour, and if on a rig, $205 per hour). […] The engineer **was not invariably** at customers' wells. Even in his busiest year on the job, **he averaged less than four hours a week on a rig and fifteen minutes a week on standby.**

*Pickens v. Hamilton-Ryker IT Solutions, LLC*, 133 F.4th 575 (6th Cir. 2025) (citing

*Wilson*, 80 F.4th at 1173).

Indeed, STC paid Mark Wilson a rig-rate bonus of $205 per hour, and in 2014

his hourly rig-rate payments totaled $72,150. *Id.* Dividing the $72,150 by the $205

hourly rate reveals only 351.95 hours spent on rigs for a whole year. Conservatively

assuming Mark Wilson worked a standard 2,080 hour working year, only **17%** of

Mark Wilson's time working for STC was spent on rigs earning additional

compensation. In sharp contrast, Guilbeau earned base rig day rate compensation for

100% of the time he completed his job duties for STC. (ROA.2843-2847;

ROA.3727-3785)

After *Wilson*, the Fifth Circuit entered its revised opinion in *Gentry v.*

*Hamilton-Ryker IT Sols., L.L.C.*, 102 F.4th 712 (5th Cir. 2024) (*Gentry II*). In *Gentry*

*II*, the plaintiff earned a weekly amount of $984, which his employer claimed was a

"salary." However, his employer paid him $123 per hour for all hours worked after

the first eight. Because those hourly rate compensated hours were "*within* the normal

workweek," the Fifth Circuit applied the reasonable relationship test in 29 C.F.R.

35

§ 541.604(b) to determine whether Terry Gentry was paid on a "salary basis." *Id.* at 722. It found that Terry Gentry was not paid on a "salary basis," and was owed back overtime pay. *Id.* at 725.

*Gentry II* rightly criticizes the reasoning of *Wilson*, which found that the pay practice complied with § 604(a) because the supposed "salary" or "minimum weekly guarantee" was not calculated (*i.e.*, not evenly divisible by) Mark Wilson's hourly rate. *Compare Wilson*, 80 F.4th at 1179 n.4 ("[*Gentry I*] is wholly concerned with a compensation scheme where the employee received a guaranteed weekly salary equal to 8 hours of pay in any week in which the employee performed any work— *i.e.*, it was computed on an hourly basis.") *with Gentry II*, 102 F.4th at 725 ("With all due respect to our sister circuit, we believe that *Schumberger* overlooked the "antecedent question" in *Helix*: whether the salary, regardless of the frequency with which it was distributed, provided a true weekly rate."). To be sure, the "minimum weekly guarantee" in *Gentry II* would not suddenly have complied with § 604(a) if Hamilton-Ryker had promised him $984.50 instead of $984. Even the example provided in § 604(b) makes that clear:

> Thus, for example, an exempt employee guaranteed compensation of at least $500 for any week in which the employee performs any work, and who normally works four or five shifts each week, may be paid $150 per shift without violating the salary basis requirement.

29 C.F.R. § 541.604(b). Patently, $500 is not divided evenly by $150. The weekly salary of $500 in the example represents about 3.33 shifts, and the shift pay, like the

36

day rate pay, begins to be paid on the first day of the workweek. The compensation structure <u>only works</u> because it complies with the reasonable relationship test, a ratio of 1 to 1.4 based on a $500 salary and $750 in shift rate pay for five days of work.

The district court extensively reviewed the Fifth Circuit's holding in *Gentry II* along with the summary judgment order to reach the proper conclusion which harmonizes with the outcome of *Wilson* if not its reasoning:

> The *Gentry II* panel viewed *Wilson* as "overlook[ing] the 'antecedent' question in *Helix*: whether the salary, regardless of the frequency with which it was distributed, provided a true weekly rate." […] It also compared *Wilson*'s reasoning as nearly identical "to the dissent in *Helix*." […] It further noted that "[t]o the extent that its decision is inconsistent with *Litz v. Saint Consulting Grp., Inc.*, 772 F.3d 1 (1st Cir. 2014), another pre-*Helix* decision out of the First Circuit, *Litz* also relied on the same flawed rationale rejected in *Helix*." […] The Fifth Circuit's approach to *Wilson* is comparable to [the district court's] consideration."

(ROA.3799 (citations omitted))

Again, there is no evidence of a district court error. Rather the district court is simply reading the Fifth Circuit's opinions and applying them to the facts of this case where the supposed "salary" paid to Guilbeau was a fraction of his normal weekly pay for performing his every day job duties.

In harmonizing *Hebert* and *Wilson*, the district court correctly applied first principles, recognizing that, regardless of whether Guilbeau's day rate compensation appears on a policy document along with actual bonuses, the economic reality, or actual pay *practices* between STC and Guilbeau are what govern:

> Viewing the facts of this case in the light most favorable to [Guilbeau], the **economic realities** are that [STC] paid [Guilbeau] a salary to be "on-call 24/7," while receiving a day rate as part of the base compensation for doing [his] job. […] Other than "attending training classes," the only work performed by [Guilbeau] was at the customer's well site," thus obtaining the day rate compensation for essentially the only work performed. […] The guaranteed salary thus covered being on-call and attending training classes. But the work to be done during the normal workweek was performed on the customer's well site, which would prompt compensation at a day rate. **As a practical matter, employers do not pay employees solely to be on call and to attend training classes.** Performing normal work on a customer's well site hardly equates to a performance incentive under § 604(a).

(ROA.3804) (emphasis added)

Still, STC claims—for the first time on appeal—that STC had the "right to withhold payment for issues such as customer complaints, or serious safety or performance issues," (Defendant-Appellant Br., p. 15), which is STC's first attempt to manufacture any condition on the payment of day rate compensation. Plaintiff-Appellants carefully reviewed the (extensive) record and could not find a mention of this specific condition presented to the district court apart from a general reference to the policy. Furthermore, STC provided no evidence that, as a matter of *economic reality*, it ever withheld a DD's day rate compensation for any reason. Guilbeau of course disputes STC would or could withhold promised day rate compensation on any basis, as his testimony was that "for every day [he was] working on a rig, [he] would get a base payment that was for – that was calculated by the day," and indeed his testimony is corroborated by his pay records—he earned day rates every day he

38

was on a rig. (*Compare* ROA.1637-1638 (Guilbeau Dep. 33:18-34:10) *with* ROA.2843-2847.) If anything, STC's self-serving citation to its own policy simply reinforces the district court's finding that a factual dispute remains for a jury to determine. (ROA.3887-3888 ("The Court has recognized a genuine dispute of material fact as to whether Guilbeau was paid bonuses for work beyond the normal workweek or whether the non-salary compensation was part of their base compensation calculated on a daily rate"))

But, even if STC had (illegally) withheld one or two day rates under some hypothetical circumstance, it still is time-based pay for work within the normal workweek triggering the analysis of § 604(b)'s reasonable relationship test. *See Gentry II*, 102 F.4th at 723-24. Indeed, the factual issue, remaining: is Guilbeau really paid a "true salary," and the day rate pay is "extra" or is he really paid by the day, and the supposed "salary" compensation is extra?

      *c.  STC Did Not Pay Guilbeau a "True Salary" Despite Its Claim that Guilbeau Admits Being Paid a Salary Under § 602(a).*

STC repeatedly argues Guilbeau "admitted" to being paid on a salary basis. This argument is a hollow attempt to substitute lay terminology for legal analysis. STC mistakenly equates Guilbeau's factual acknowledgement of a bi-weekly payment with a legal admission of exempt status. While Guilbeau received a fixed, recurring payment of $913 per week, whether that payment satisfies the salary basis test under the FLSA is obviously a question of law. As this Court held in *Taylor*, the

39

nature of a payment "is a question of law that relies on how a payment works in practice, rather than what it is called." 45 F.4th at 839. An employee's use of the word "salary" to describe a recurring check does not waive the protections of the FLSA or the "hard look" required by *Gentry II*.

> With all due respect to our sister circuit, we believe that *Schlumberger* overlooked the "antecedent" question in *Helix*: whether the salary, regardless of the frequency with which it was distributed, **provided a true weekly rate**.

> In our view, *Helix* and sections 602(a), 604(a), and 604(b) require courts to take a hard look at whether a purported "salary" truly compensates employees for a week's worth of work or, instead, provides an **artificial distinction between salary and [other wages]**. As such, our holding is consistent with *Helix*, the regulatory text, and decisions from our sister circuits upholding salaries that—unlike HR-IT's—paid employees a weekly rate.

A "true salary" represents protection of an employee's *weekly* rate of pay. It is intended to ensure an employer does not depart from the weekly amount, for instance, when a salaried employee is summoned for jury duty. *See* 29 C.F.R. § 541.602(b)(3). By paying most of Guilbeau's wages in the form of day rate, Guilbeau did not receive those protections because STC could deduct his day rate compensation if he did not work that day. *See Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 60 (2023) ("Helix could come into compliance with the salary-basis requirement for Hewitt and similar employees in either of two ways. It could add to Hewitt's per-day rate a weekly guarantee **that satisfies § 604(b)'s conditions.** Or it could convert Hewitt's compensation to a straight weekly salary for time he spends

40

on the rig. […] But that is just to say that Helix wishes *neither* to pay employees a true salary *nor* to pay them overtime. And the whole point of the salary-basis requirement is to take that third option off the table, even though doing so may well increase costs." (bold emphasis added, italic emphasis in original)). Here, STC attempted to add a weekly guarantee to Guilbeau's day rate but failed to provide a guarantee in amount sufficient to satisfy § 604(b).

The salary basis test is designed to protect a full week's worth of pay (as opposed to a dollar amount like the salary level test). This is clear from 602 itself. The employee's pay for the week (his "Salary") is not supposed to be reduced if he misses one or more days because of jury duty, for example. But under this pay scheme, his "full salary for the week" is not protected, just a tiny slice.

Still, STC emphasizes Guilbeau's statement that he was "paid **partially** on a salary basis." (ROA.485). Rather than a concession, this statement is an accurate description of a § 604(b) "hybrid" or "bifurcated" scheme (i.e., a "minimum guarantee plus extras" plan) that triggers the very dispute at issue. After all, the guarantee required by § 604(b) must be paid on a "salary basis." 29 C.F.R. § 541.604(b). The question is whether the portion paid on a "salary basis" covers a full workweek (and thus implicates § 602(a)) or the salary represents less than a full week's pay (meaning § 604(b) applies). *Gentry II*, 102 F.4th at 719.

41

Under the regulations, *Helix,* and *Gentry II*, an employer cannot satisfy the FLSA by being "partially" compliant with § 602(a). If the "salary" portion is merely a pittance—accounting for barely 22% of total pay—and the remainder is a day-rate for normal work, the "salary" component is legally insufficient. Guilbeau's admission that his pay was only "partially" a salary confirms the economic reality: the dominant portion of his wages was computed on a daily basis, thus mandating the application of the "reasonable relationship" test under § 541.604(b).

In sum, this is not a "salary plus extra compensation" case. "Extra" or "additional" compensation is only "additional" after a week's worth of work has been paid, that is, after the "full salary for that week" is protected. *Helix*, 598 U.S. at 46 (citing 29 C.F.R. § 541.602(a)). "Additional compensation"—beyond the "full weekly salary"—is a 541.604(a) concept, which does not exist here. Calling the dominant portion of an employee's wages a "bonus" does not change the economic reality of its character as wages. In short, Guilbeau was a day-rate worker who received a small weekly floor—a pittance compared with his day rate.

The district court correctly focused on whether Guilbeau was paid a "true salary":

> But as already discussed in detail and held in *Gentry II*, "payment on a 'weekly basis' requires that an employee be paid a 'weekly rate," and a "weekly rate compensates employees for all work performed that week." 102 F.4th at 720. As mentioned earlier, when a "guaranteed weekly salary" fails "to provide a weekly rate, it [is] not a true salary but [is] illusory." *Id*. at 721.

42

(ROA.3806)

### 5.   *Venable*, Affirming a Ruling Issued Prior to *Helix*, Does Not Mandate Summary Judgment Where the Facts Wildly Diverge.

Post-*Gentry II*, two cases contribute to the § 604(b) conversation. Out of the Fifth Circuit, *Venable*,[36] out of the Sixth, *Pickens*.[37] The district court considered both and neither changed its mind that the animating force of the determination is the as-yet undetermined nature of Guilbeau's day rate compensation.

While Judge Summerhays did not have the benefit of the Supreme Court's ruling in *Helix* when he ruled in *Venable*,[38] he was still able to determine, for the same reasons as in *Hebert*, that Jack Venable did not earn day rate wage compensation as a reamer. It may have appeared as though the district court's order ignored this Court's holding that "an employer can pay a daily rate under § 541.604(b) and still satisfy the salary-basis test of § 541.602—but only if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis … and a reasonable relationship exists between the guaranteed amount and the amount actually earned." *Hewitt v. Helix*

---

[36]   *Venable v. Smith Int'l, Inc.*, 117 F.4th 295 (5th Cir. 2024).

[37]   *Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575 (6th Cir. 2025).

[38]   *Venable v. Schlumberger Ltd.*, No. 6:16-CV-00241, 2022 WL 895447 (Mar. 25, 2022).

*Energy Sols. Grp., Inc.*, 15 F.4th 289, 294 (5th Cir. 2021) (citing § 604(b)). But something else was happening.

A careful review of the record in *Venable* paints a different picture. While Guilbeau had no option to perform work outside of STC's customer's rigs, it was an option for the reamers[39] in *Venable* and, as discussed above, for Brent Hebert:

A     I received that amount for each chargeable day,
meaning if Schlumberger charged for me, then I get
that day, but if Schlumberger didn't charge for me,
you know, I didn't get it.  So if I worked in a
shop for a week, I didn't get -- I didn't get that
day rate.
Q     Okay, so if you were doing work, other than
chargeable work to the client, that was covered by
your salary, but you -- if you were doing
chargeable work for a client, you got your day
rate; is that correct?
A     For the most part, yeah.  I mean, there was some
overlap.  Sometimes I would get it, just depends.
Q     Okay, and then other than being a day that was
chargeable to the client, were there any other
requirements that had to be met in order for you to
get the day rate?

---

[39] Venable's Statement of Undisputed Material Facts even stated: "Smith did not pay Plaintiffs a day rate for every day they worked." (Record Excerpts, Tab 7)

(Record Excerpts, Tab 7) As discussed above, it's just difficult to conceive of a wage that you don't earn every day you work.

Accordingly, Judge Summerhays correctly found that the reamers earned a "true salary" pursuant to 29 C.F.R. § 541.604(a), because the extra compensation they earned on top of their salary was a *bona fide* bonus paid as <u>additional compensation</u> for work <u>beyond the normal workweek</u> without violating the FLSA, just as this Court previously held in *Hebert*.

Thus, STC's suggestion that day rate pay was transmogrified into a "bonus" because it came from STC's customers is inapposite. (Defendant-Appellant Br., pp. 3-5) The issue in *Venable* was not the provenance of the funds, but rather that Jack Venable performed job duties off Smith's customer's rigs, just like Brent Hebert. Even if it did matter, *all* STC's revenue derives from customer payments. (ROA.656 (30(b)(6) Dep. 95:18-23)). Consequently, the source of revenue does not make Guilbeau's non-variable day rates seem more like a commission or incentive. Guilbeau did not make more if he did a better job or if a customer paid more.

The district court therefore carefully considered and distinguished *Venable* on that basis since all of Guilbeau's work time was spent on customer rigs:

> Viewing the facts of this case in the light most favorable to Plaintiffs, the economic realities are that Defendant paid Plaintiffs a salary to be "on-call 24/7," while receiving a day rate as part of the base compensation for doing their job. […] Other than "attending training classes," the only work performed by Plaintiff was at the "customer's well site," thus obtaining the day rate compensation for essentially the

45

only work performed. *Id.* […] As a practical matter, employers do not pay employees solely to be on call and to attend training classes. **Performing normal work on a customer's well site hardly equates to a performance incentive under § 604(a).** Such work does not appear to be beyond the normal workweek as contemplated by § 604(a), thus relegating the compensation to § 604(b), if paid by the hour, shift, or day.

(ROA.3804 (emphasis added); *accord* ROA.3801-3803)

It is also plainly irrelevant that Smith is a related entity, especially where, as stated above, the pay practice is *not* substantially the same. Indeed, under *Swales* the reamers in *Venable* would hardly be similarly situated to STC's DDs

Finally, STC claims the day rate was a bonus because of its unsubstantiated claim it was not paid unconditionally. (Defendant-Appellant Br., p. 4) But STC merely highlights the disputed issue of material fact that has cause the district court to withhold summary judgment in its favor all along. (ROA.3803; ROA.3805-3806) Guilbeau disputes that STC could or would withhold the day rate on any basis and STC has provided no record evidence showing it ever withheld rig day rate compensation. On the other hand, Guilbeau's testimony was that all he had to do to earn this supposed "bonus" was to show up during his normal workweek and perform his ordinary job duties. (ROA.1637-1638 (Guilbeau Dep. 33:18-34:10)) Thus, even if STC would or could have docked Guilbeau's pay under some hypothetical circumstance, that would not change its character as daily wages earned within the normal workweek, triggering the analysis of § 604(b)'s reasonable

46

relationship test. Furthermore, Guilbeau earned bonuses that, in the absence of his rig day rate compensation, inarguably would have been compliant with § 604(a), highlighting further the distinction. (ROA.1637-1640 (Guilbeau Dep. 33:18-35:12); ROA.1684-1688))

In sum, *Venable* broke no new ground for STC. It is dispatched as easily as *Hebert*.

Rounding out the applicable appellate caselaw is Judge Sutton's opinion in *Pickens*.[40] In *Pickens*, the Sixth Circuit, in no uncertain terms, framed the exact issue in this case: Schlumberger attempted to comply with § 604 by adding weekly rate pay, but *failed entirely* to ensure that the weekly rate was a "true" salary because the supposed salary bears no reasonable relationship to Guilbeau's actual pay for a week:

> The Court in *Helix* told employers that they could "come into compliance with the salary-basis requirement … in either of two ways": "[A]dd to" an employee's "per-day rate a weekly guarantee **that satisfies § 604(b)'s conditions**" or "convert [an employee's] compensation to a straight weekly salary for time he spends on the" job. *Id.* at 60. The Court left no room for a **secret third option** in which an employer could evade the Act merely by calling [an amount of pay] his "weekly salary."

*Id.* at 585 (emphasis added). Of the two roads available to employers paying time-based compensation, Schlumberger picked neither a flat weekly salary comprising the entirety of Guilbeau's pay, nor a weekly salary plus extra compensation for work

---

[40]    *Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575 (6th Cir. 2025).

within the normal workweek that complies with the reasonable relationship test—so it is potentially liable in this case.

**B.      STC Also Nitpicks Technical Aspects of the District Court's Rulings but Establishes No Grounds to Overturn Its Orders.**

**1.      The District Court Did Not Err in Reviewing the Magistrate Judges Meticulous Rulings.**

STC also finds fault with the way the district court reviewed the magistrate judge's report and recommendation and order. (Defendant-Appellant Br., pp. 38-41) But STC's perfunctory technical arguments bear no fruit. STC cites no case where an appellate court overturned a district court's ruling due to improper review of a magistrate judge's rulings, but rather cites cases standing for the unremarkable proposition that appellate courts can resolve questions of law based on undisputed facts—which is not the case here. (Defendant-Appellant Br., p. 41). Even if the district court used a technically improper standard to review the magistrate judge's rulings—it agreed with the magistrate judge repeatedly. Accordingly, even if the district court reviewed the magistrate judge's rulings inappropriately, which Guilbeau does not contend, there is no harm.

Still, STC is wrong where it says that the magistrate's factual findings regarding the salary basis test are entitled to no deference. Under Rule 56, even if facts are settled, if those facts support competing inferences, the court *must* draw the inference in favor of the non-movant. *Impossible Electronic Techniques, Inc. v.*

48

*Wackenhut Protective Sys., Inc.*, 662 F.2d 1026, 1031 (5th Cir. 1982) ("courts should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion"). Thus, the district court correctly inferred that, even where the amounts of compensation were not in dispute, to "the extent that there is a salary component that appears to satisfy § 602(a), the appearance is a ruse—an illusion to cover up the computation of the employee's earnings computed on a daily basis—a computation that directly invokes § 604(b) and its reasonable relationship component. (ROA.3256)

## 2.    The District Court Correctly Held STC's Affirmative Defense Is Not a "Threshold Issue" Forbidding Notice Under *Swales*.

### a.  Standard of Review

*Swales*[41] itself makes clear that while it reviewed the question of what "legal standard district courts should use when deciding whether to send notice in an FLSA collective action" *de novo*, after "the correct legal standard is ascertained, we review the district court's decision for abuse of discretion."

### b.  Plaintiffs Cannot Be Made to Disprove FLSA Exemptions on Which They Do Even Not Bear the Burden of Proof to Satisfy Swales.

STC argues that, under *Swales*, the district court should have resolved its affirmative defense on the merits as a "threshold issue" before transmitting notice to

---

[41]  *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021).

the collective action members. (Defendant-Appellant Br., pp. 41-42.) STC claims a laundry list of cases, many decided before or making no mention of *Swales*, supports its position. (*See id.*, p. 42 n.16) STC's demand for a "cognizable claim" finding is essentially a request for a ruling on a motion to dismiss disguised as a *Swales* objection. But the district court already ruled on STC's motion to dismiss and found that Guilbeau *had* alleged a claim that STC's pay practice that potentially violates the FLSA and thus already determined the claim was "cognizable." (ROA.222-234)

STC essentially asks this Court to create a new pre-notice summary judgment requirement that *Swales* specifically avoided. Nowhere in *Swales* does the Fifth Circuit require a plaintiff to win summary judgment before notice can issue. Indeed, the Fifth Circuit explicitly states that merits decisions are still inappropriate to be rendered before notice. *Swales*, 985 F.3d at 442 ("Considering, early in the case, whether merits questions can be answered collectively has nothing to do with endorsing the merits."). *Accord Segovia v. Fuelco Energy LLC*, No. SA-17-CV-1246-JKP, 2021 WL 2187956, at *7 (W.D. Tex. May 28, 2021). Indeed, in *Loy*[42] the Fifth Circuit confirmed that threshold issues do not pertain to whether an employee *will* win their case, but rather "whether merits questions can be answered collectively." *Id.* quoting *Swales*, 985 F.3d at 442. District courts are even welcome

---

[42]   *Loy v. Rehab Synergies, L.L.C.*, 71 F.4th 329, 337 (5th Cir. 2023).

50

Case: 25-50594    Document: 50-1    Page: 62    Date Filed: 01/05/2026

to continue to consider *Lusardi* factors to help inform or guide the similarly situated analysis to the extent that they find the factors useful. *Id.* at 336-37. *Swales* merely holds that district courts may not *ignore* facts that render collective action members dissimilarly situated simply because they involve the merits. *Swales*, 985 F.3d at 441.

District courts interpreting *Swales* have held similarly. *Sterling v. Greater Houston Transp. Co.*, No. H-20-910, 2021 WL 2954663, at *2 (S.D. Tex. July 14, 2021); *Segovia*, 2021 WL 2187956, at *10.

Thus, the magistrate judge correctly recognized that *Swales* does not require plaintiffs to "marshal summary-judgment evidence to disprove Schlumberger's affirmative defense in the context of a motion for notice." (ROA.2945) The district court also appropriately recognized that an affirmative defense that "appears to relate to all putative members of the collective action [...] is not a defense that must be addressed before notice issues" since the class will succeed or fail together. (ROA.3264-3265) STC has demonstrated no reversible error.

**3.    The District Court Did Not Abuse Its Discretion in Finding STC Judicially Estopped from Raising a Statutory Argument.**

   *a.  Standard of Review*

51

A district court's ruling whether a litigant is judicially[43] estopped from raising an argument contrary to one upon which it previously relied is reviewed for abuse of discretion. *Dacar v. Saybolt, L.P.*, 914 F.3d 917, 924 (5th Cir. 2018).

### b. STC Never Properly Raised the Issue of DOL's Authority to Regulate FLSA's Statutory Exemptions.

Finally, the district court did not err in finding that STC failed to timely raise a defense regarding DOL's authority to make rules regarding the salary basis test. (Defendant-Appellant Br., p. 44) Spilling a great deal of ink about *Nevada*[44] and its companion case *Texas*,[45] both non-binding cases addressing the *salary level* test, not the *salary basis* test applicable in this case, STC attempts to rehash its lukewarm attack on DOL's ability to regulate. (*Id.*, p. 32)

Judicial estoppel is an equitable doctrine prohibiting conduct such as STC's in asserting a "position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." *Occidental Petroleum Corp. v. Wells*

---

[43] STC interchangeably refers to equitable and judicial estoppel in its Brief. These are of course two different concepts. *See In re Coastal Plains, Inc.*, 179 F.3d 197, 210 (5th Cir. 1999) ("[U]nlike the well-known reliance element for other forms of estoppel, such as equitable estoppel, detrimental reliance by the party seeking *judicial estoppel* is *not* required. Again, the purpose of *judicial estoppel* is *not* to protect the litigants; it is to protect the integrity of the judicial system."). The rulings at issue concern only judicial estoppel.

[44] *Nevada v. U.S. Dept. of Labor*, 275 F. Supp. 3d 795 (E.D. Tex. 2017)

[45] *Texas v. U.S. Dept. of Labor*, 756 F. Supp. 3d 361 (E.D. Tex. 2024).

52

*Fargo Bank, N.A.*, 117 F.4th 628, 638 (5th Cir. 2024) (citation omitted). Judicial estoppel is merited where (1) the estopped party's position is clearly inconsistent with its previous one, and (2) the party must have convinced the court to accept that previous position. *Id.*

Not once in its motion to dismiss (ROA.95-110), any of its responsive pleadings, nor its motion for summary judgment (ROA.2634-2658), did STC raise a defense that the regulations regarding the salary basis test are not binding. As recognized by the district court, STC only raised the issue about the inapposite *salary level* rulings in response to Plaintiff's *Swales* brief and in its reply in support of its motion for summary judgment. (ROA.3265) THus, STC took a contrary position, recognizing the binding nature of the regulations to the FLSA with respect to the salary basis test, and relying on the HCE exemption which STC by its new argument would enfeeble. (ROA.95-110; ROA.2634-2658) The district court did not abuse discretion in finding STC judicially estopped. (ROA.3265)

> ### c. Even If STC Won Remand Regarding DOL's Authority—Its Argument Is Foreclosed by Mayfield.

Even if the district court erred in failing to consider STC's arguments, its claims are time barred and foreclosed by Fifth Circuit precedent.

STC failed to timely lodge an APA challenge. *See, e.g., State v. Rettig*, 987 F.3d 518 (5th Cir. 2021) (noting six-year statute of limitations from "final agency

action"). Section 604 has been the law since April 23, 2004. 69 Fed. Reg 22122-01, 2004 WL 865626 at *22271.

STC ignores this Court's binding precedent. In *Mayfield*,[46] which was decided *after Loper*,[47] a litigant challenged DOL's authority to regulate the salary portion of regulations related to FLSA exemptions. There, this Court held that DOL has the explicit authority to "define" and "delimit" FLSA exemptions, including imposing a salary requirement. *Mayfield*, 117 F.4th at 617-18. Given *Mayfield*, STC has no basis to claim DOL lacks authority to require a "true salary" under regulations that have existed for decades.

## VII.   CONCLUSION

Because Guilbeau received day rate compensation for all days he performed his job duties for STC, his compensation mirrors the pay practice in *Gentry II* and diverges from *Venable*. Comparing the day rate at issue with actual non-discretionary bonuses STC paid—reduced crew and lead bonuses—lays bare the distinction. Guilbeau's day rate was not a bonus, it was wages for ordinary work within the

---

[46]   *Mayfield v. United States Department of Labor*, 117 F.4th 611 (5th Cir. 2024) (decided on September 11, 2024).

[47]   *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 391-92 (2024) (decided on June 28, 2024) (recognizing "the unremarkable, yet elemental proposition reflected in judicial practice dating back to *Marbury*" that "courts decide legal questions by applying their own judgment," even in agency cases.).

normal workweek. Given Guilbeau's day rate compensation significantly outstripped his supposed "salary," his compensation violated the FLSA per *Helix*.

Guilbeau respectfully requests that the Court affirm the district court's rulings and remand this matter for further discovery and trial.

Dated: January 5, 2026                    Respectfully submitted,

                                          By:    s/Melinda Arbuckle
                                                 Melinda Arbuckle
                                                 Texas Bar No. 24080773
                                                 marbuckle@wageandhourfirm.com
                                                 Ricardo J. Prieto
                                                 Texas Bar No. 24062947
                                                 rprieto@wageandhourfirm.com
                                                 **Wage and Hour Firm**
                                                 5050 Quorum Drive, Suite 700
                                                 Dallas, Texas 75254
                                                 (214) 489 - 7653
                                                 (469) 319 - 0317 – facsimile

                                          *Attorneys for Plaintiff-Appellees*

## **CERTIFICATE OF SERVICE**

I certify, in accordance with Fed. R. App. P. 25(d) and 5th Cir. R. 25.2, that on January 5, 2026, I caused the foregoing document to be filed with the Court and served on counsel by filing it through the Court's CM/ECF system which will electronically notice the following counsel of record:

Samuel Zurik, III
Robert P. Lombardi
Bryan E. Bowdler
Benjamin P. Kahn
The Kullman Firm
1100 Poydras Street, Suite 1600
New Orleans, Louisiana 70163
    sz@kullmanlaw.com
    rpl@kullmanlaw.com
    beb@kullmanlaw.com
    bpk@kullmanlaw.com

s/Melinda Arbuckle
Melinda Arbuckle

*Attorney for Plaintiff-Appellees*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements

1.      This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

■ this document contains 12,975/13,000 words, or

☐ this brief uses a monospaced typeface and contains _____ lines of text.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

■ this document has been prepared in a proportionally spaced typeface using Microsoft® Word in 14-point Times New Roman font, or

☐ this document has been prepared in a monospaced typeface using _____ with _____.

Dated: January 5, 2026                    s/Melinda Arbuckle_____
                                          Melinda Arbuckle

                                          *Attorney for Plaintiff-Appellees*